IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RICHARD MCCREA,                                      Case No. 3:15-cv-00166-SB

        Plaintiff,                                **OPINION AND**
                                                              **ORDER**

    v.

CAROLYN W. COLVIN,
Commissioner of Social Security,

        Defendant.

_____

**BECKERMAN, Magistrate Judge.**

    Richard McCrea ("McCrea") appeals from the Commissioner of the Social Security's ("Commissioner") denial of his application for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. The Court has jurisdiction over McCrea's appeal pursuant to 42 U.S.C. § 1383(c)(3), which incorporates the review provisions of 42 U.S.C. § 405(g). For the reasons that follow, the Commissioner's decision is reversed and this case is remanded for an award of benefits.

Page 1 - OPINION AND ORDER

## I. FACTS AND PROCEDURAL HISTORY

McCrea stands five-feet, ten-inches tall and weighs approximately 200 pounds. He was born in March 1960, making him thirty-seven years old on June 15, 1997, the alleged disability onset date, and fifty-one years old on September 9, 2011, the protective filing date.[1] McCrea obtained a general equivalency degree and attended two years of college. He has prior work experience as a landscaper and part-time maintenance worker at a motel, but he has not been gainfully employed since 1997. McCrea alleges disability due primarily to hand, back, leg, foot, and ankle pain and associated limitations.

On October 18, 1998, McCrea was admitted to the hospital with an abscess on the inner crook of his right elbow and "extensive cellulitis." (Tr. 250.) McCrea reported that he had injected heroin into the crook of his elbow "multiple times recently and . . . ha[d] noted that the abscess ha[d] gotten progressively larger, with warmth and swelling around the entire upper arm." (Tr. 252.) Doctors drained the abscess and administered antibiotics before discharging McCrea on October 21, 1998.

On April 26, 2005, McCrea visited the emergency room at Legacy Emanuel Medical Center. McCrea informed Dr. Aloysiu Fobi that he was having difficulty walking due to pain in his right foot, and that he "hit [a] tractor trailer door with [his] right hand [and thought] that it might be broken." (Tr. 414.) X-rays of McCrea's right hand revealed an "[a]cute fracture of the distal third metacarpal" and a "[s]evere chronic deformity of the carpal joints," and x-rays of McCrea's right

---

[1] The "earliest" a Supplemental Security Income "claimant can obtain benefits is the month after which he filed his application." *Schiller v. Colvin*, No. 1:12-cv-00771-AA, 2013 WL 3874044, at *1 n.1 (D. Or. July 23, 2013) (citing 20 C.F.R. § 416.335)).

foot were negative for a fracture, but they did reveal a mild "hallux valgus," also known as a bunion. (Tr. 276, 279.)

On January 12, 2007, McCrea again visited the emergency room at Legacy Emanuel Medical Center. McCrea informed Dr. Jeffrey Campbell that he was involved in a collision while riding his bicycle. (Tr. 410-13.) A computerized tomography ("CT") scan of McCrea's cervical spine was negative for fracture, but it did reveal "[a]dvanced degenerative changes." (Tr. 285.) X-rays obtained that day also revealed "[d]egenerative changes in the glenohumeral joint" of the left shoulder, "[d]egenerative changes [in the] first carpometacarpal joint" of the left wrist, and "[f]used distal arcade of carpals which are fused to the second through fourth metacarpals" of the right wrist. (Tr. 291, 299, 302.)

On March 17, 2007, McCrea visited Legacy Emanuel Medical Center, complaining of severe left scrotal pain. McCrea was diagnosed with an inguinal hernia and "[l]ikely testicular carcinoma." (Tr. 244.) He underwent a radical orchiectomy and hernia repair, and was discharged on March 20, 2007.

On September 7, 2010, x-rays of McCrea's right foot revealed that he was suffering from bunions and "hammer toes." (Tr. 311.)

On May 18, 2011, x-rays of McCrea's right clavicle revealed a "comminuted fracture" with "some displacement and angulation." (Tr. 450.)

On October 17, 2011, Cori McCrea ("Mrs. McCrea") completed a third-party adult function report, in support of her husband's application for benefits.[2] Mrs. McCrea stated that her husband

---

[2] McCrea also completed an adult function report on October 18, 2011. McCrea's report largely reflects the same information as his wife's report.

lives in transitional housing for recovering addicts, and he suffers from foot and leg pain, anxiety, and vision problems. Mrs. McCrea added that her husband's impairments interfere with his ability to sleep, put on shoes, lift, squat, bend, "stand for any amount of time," reach, "walk [long] distance[s]," sit, kneel, climb stairs, complete tasks, concentrate, use his hands, and get along with others. (Tr. 199.) However, McCrea is capable of preparing simple meals, counting change, handling a savings account, shopping at the local convenient store three times a week, using a checkbook or money order, performing household chores on a limited basis, using public transportation, and attending meetings.

On November 18, 2011, McCrea was referred to Dr. Kevin Yuen ("Dr. Yuen") for a physical evaluation. Dr. Yuen observed that McCrea scored a thirty out of thirty on a Mini-Mental Status Examination.[3] In terms of physical limitations, Dr. Yuen opined that McCrea could stand and walk for less than two hours during an eight-hour workday; sit for up to six hours in an eight-hour workday; and occasionally lift and carry twenty pounds, climb ramps, stairs, ladders, ropes, and scaffolds, balance, stoop, kneel, crouch, and crawl. Dr. Yuen added that McCrea needed to avoid working at heights, but he otherwise had no reaching, handling, fingering, feeling, or environmental limitations.

On November 21, 2011, x-rays revealed that McCrea was suffering from "multi-level degenerative changes in [the] lumbar spine." (Tr. 320.)

On December 15, 2011, Dr. Richard Alley ("Dr. Alley"), a non-examining state agency physician, completed a physical residual functional capacity assessment. Based on his review of

---

[3] "The [Mini-Mental Status Examination] is a [thirty]–point cognitive test used to evaluate an adult's cognitive mental status." *Dimaggio v. Colvin*, No. 5:13–cv–296, 2015 WL 4392954, at *7 n.5 (D. Vt. July 15, 2015) (citation omitted).

McCrea's medical records, Dr. Alley determined that McCrea could lift and carry twenty pounds occasionally and ten pounds frequently; could stand, walk, and sit for six hours in an eight-hour workday; could push and/or pull in accordance with the lift and carry restriction; could frequently balance, kneel, crouch, and climb ramps and stairs; could occasionally stoop, crawl, and climb ladders, ropes, and scaffolds; and needed to avoid concentrated exposure to hazards like machinery and heights. Dr. Alley also found that McCrea had no manipulative, visual, or communicative limitations.

On December 19, 2011, Dr. Kordell Kennemer ("Dr. Kennemer"), a non-examining state agency psychologist, completed a psychiatric review technique assessment, wherein he evaluated McCrea's impairments under listings 12.04 (affective disorders) and 12.09 (substance addiction disorders).[4] Dr. Kennemer concluded that the limitations imposed by McCrea's impairments failed to satisfy listings 12.04 and 12.09. In a mental residual capacity assessment completed that same day, Dr. Kennemer observed that McCrea is capable of understanding and remembering simple, routine tasks, "but is unable to remember and understand complex and detailed tasks on a sustained basis." (Tr. 58.)

On April 4, 2012, Dr. Neal Berner ("Dr. Berner"), a non-examining state agency physician, recommended that the Social Security Administration affirm Dr. Alley's initial physical residual functional capacity assessment "as written." (Tr. 70.) The following day, Dr. Bill Hennings ("Dr. Hennings"), a non-examining state agency psychologist, recommended affirmance of Dr.

---

[4] The Listing of Impairments is found at 20 C.F.R. Part 404, Subpart P, Appendix 1, and described at 20 C.F.R. §§ 404.1525, 404.1526, 416.925, 416.926.

Kennemer's psychiatric review technique assessment and mental residual capacity assessment "as written." (Tr. 70.)

On April 19, 2012, McCrea presented for a psychological evaluation with Dr. Steven Barry ("Dr. Barry"). Dr. Barry reviewed McCrea's medical file and conducted a clinical interview and Personality Assessment Inventory.[2] Dr. Barry observed that the Personality Assessment Inventory elicited a profile that "should be considered marginally valid," because the scores suggested that "it's likely [McCrea] might be depicting himself somewhat more impaired than others might view him." (Tr. 337.) Dr. Barry, however, made clear that the scores did not invalidate McCrea's profile, and that he "can't envision how [McCrea] can work," given his depression, isolating behavior, and lack of coping skills. (Tr. 339.) Dr. Barry's diagnoses included, among other things: major depressive disorder and posttraumatic stress disorder stemming from childhood sexual abuse (Axis I); financial and social stressors, a limited support system, and "being clean and sober with limited coping resources" (Axis IV); and a Global Assessment of Functioning Score ("GAF") score of 43-45.[3] (Axis V).

An administrative law judge ("ALJ") convened a hearing on July 23, 2013, at which McCrea testified about the limitations resulting from his impairments. McCrea testified that he stopped working in 1997 due to "[p]ain mostly." (Tr. 31.) McCrea further testified that he had been convicted

---

[2] "A Personality Assessment Inventory . . . provides information relevant for clinical diagnosis, treatment planning and screening for psychopathology[.]" *United States v. Campbell*, 738 F. Supp. 2d 960, 967 n.13 (D. Neb. 2010) (citation omitted).

[3] A GAF score of 45 "indicates 'serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).'" *Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014) (citation omitted).

of burglary and a number of alcohol-related driving infractions, but he has been clean and sober since 2011. In terms of daily activities, McCrea stated that he spends most of the day sleeping, and he occasionally walks to the park or to the pharmacy to pick up his medications. In terms of physical limitations, McCrea stated that he has difficulty gripping objects, moving his wrists, reading due to vision problems, and walking due to back, left leg, and foot impairments. McCrea acknowledged that is he able to cook, shop once a month, and walk twenty-two blocks with periodic breaks.

The ALJ posed a series of questions to a vocational expert ("VE") who testified at McCrea's hearing. The ALJ first asked the VE to assume that a hypothetical worker of McCrea's age, education, and work experience could "walk [twenty-two] blocks at a time, four of eight hours," "stand for four of eight hours," "sit [for] six of eight hours," lift fifty pounds occasionally and twenty-five pounds frequently, and have occasional interaction with co-workers and supervisors, but no contact with the public. (Tr. 43.) The VE testified that the hypothetical worker could be employed as a recycling reclaimer (DOT 929.687-022), hand packer (DOT 920.587-018), and price marker (DOT 209.587-034). The VE further testified that there were 44,000 recycler reclaimer jobs in the national economy, including 330 in Oregon; 42,000 hand packer jobs in the national economy, including 450 in Oregon; and 270,000 price marker jobs in the national economy, including 2,400 in Oregon. The ALJ next asked the VE about the customary tolerance for absences in the workplace. The VE testified that an individual who misses work twice a month could not sustain competitive employment.

McCrea's attorney also posed a series of question to the VE. McCrea's attorney first asked the VE to assume that the hypothetical worker could occasionally lift twenty pounds, stand for two hours during an eight-hour workday, and have occasional contact with co-workers and supervisors,

Page 7 - OPINION AND ORDER

but no contact with the public. Before the VE could respond to McCrea's attorney's question, the ALJ confirmed that the hypothetical worker would "grid[] out," and a finding of disabled would be warranted, because the standing limitation effectively limits the worker to "sedentary work."[4] (Tr. 45.) McCrea's attorney next asked the VE to assume that the hypothetical worker could not perform work that required near acuity (e.g., "deal with objects closer than [twenty] inches"), or work that required more than occasional handling or fingering with the right hand. The VE testified that the hypothetical worker could still perform the price marker job because it only involved "taking a little plastic gun and putting labels on stuff," and because it could be performed with either hand. (Tr. 45-46.)

On August 9, 2013, McCrea presented for a follow-up visit with his treating physician, Dr. Tanya Page ("Dr. Page"). Dr. Page noted that she has treated McCrea "several times a year" since August 18, 2009, and that McCrea suffers "severe limitation" in his right wrist movement due to a prior surgical operation and "chronic foot pain from [bilateral] bunions [that is] inoperable currently due to insurance not covering [the] procedure." (Tr. 483, 486.) Dr. Page assigned McCrea a GAF score of 45.

That same day, Dr. Page completed a Physical Capacity Statement at the request of McCrea's attorney. Dr. Page observed that she was treating McCrea for sciatic, bilateral bunions, deformity of the right wrist, a rotator cuff injury, depression, posttraumatic stress disorder, and daily headaches. Dr. Page indicated that McCrea needed to avoid lifting and handling with his right wrist and

---

[4] "Social Security regulations set forth an occupational grid for sedentary work that requires a disability finding for individuals closely approaching advanced age (50–54 years old) who are high school graduates without transferable work skills[.]" *Creasy v. Barnhart*, 30 F. App'x 620, 623 n.2 (7th Cir. 2002).

Page 8 - OPINION AND ORDER

exposure to stress. Dr. Page also estimated that McCrea could stand or walk for about two hours during an eight-hour workday, could sit for about six hours during an eight-hour workday, needs to be able to shift "positions at will from sitting to standing or walking," needs to be able to lie down at work outside of normal break periods, could lift and carry no more than ten pounds and never lift or carry twenty pounds, and would be absent from work twice per month due to his impairments. (Tr. 479.)

In a written decision issued on October 25, 2013, the ALJ applied the five-step sequential evaluation process set forth in 20 C.F.R. § 416.920, and found that McCrea was not disabled. *See infra* Part II.A-B. The Social Security Administration Appeals Council denied McCrea's petition for review, making the ALJ's decision the Commissioner's final decision. McCrea timely appealed to the federal district court.

## II. THE FIVE-STEP SEQUENTIAL PROCESS

### A.    Legal Standard

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are as follows:

> (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal [one of the listed impairments]? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

Page 9 - OPINION AND ORDER

*Id.* at 724-25. The claimant bears the burden of proof for the first four steps in the process. *Bustamante v Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of the first four steps, the claimant is not disabled. *Id.*; *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987).

The Commissioner bears the burden of proof at step five of the process, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails to meet this burden, the claimant is disabled. *Bustamante*, 262 F.3d at 954 (citations omitted).

**B.    The ALJ's Decision**

At the first step of the five-step sequential evaluation process, the ALJ found that McCrea had not engaged in substantial gainful activity since September 9, 2011, the day he filed his application for benefits. At the second step, the ALJ found that McCrea had the following severe impairments: "lumbar spine degenerative disc disease, antisocial personality disorder, and bilateral bunions." (Tr. 13.)

At the third step, the ALJ found that McCrea's combination of impairments was not the equivalent of those on the Listing of Impairments. The ALJ then assessed McCrea's residual functional capacity ("RFC") and found that he could perform less than the full range of medium work, as defined under 20 C.F.R. § 416.967(c).[5] The ALJ also found that McCrea "should not have

_____

[5] Under the Social Security regulations, medium work "involves lifting no more than [fifty] pounds at a time with frequent lifting or carrying of objects weighing up to [twenty-five] pounds." 20 C.F.R. § 416.967(c).

contact with the public, but he is capable of having "occasional interaction with co-workers and supervisors," sitting for six hours in an eight-hour workday, standing for four hours in an eight-hour workday, lifting and carrying fifty pounds occasionally and twenty-five pounds frequently, and walking twenty-two "blocks at a time for [four] out of [the eight] hours [during the workday.]" (Tr. 17.)

At the fourth step, the ALJ concluded that McCrea had no past relevant work. At the fifth step, the ALJ found that jobs existed in significant numbers in the national economy that McCrea could perform, such as recycler reclaimer (DOT 929.687-022), hand packager (DOT 920.587-018), and price marker (DOT 209.587-034). Thus, the ALJ concluded that McCrea was not disabled, as defined under the Social Security Act, "since September 9, 2011, the date the application was filed[.]" (Tr. 23.)

### III. STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or [are] based on legal error.'" *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett*, 180 F.3d at 1097). Instead, the district court must consider the entire record,

Page 11 - OPINION AND ORDER

weighing both the evidence that supports the Commissioner's conclusions, and the evidence that detracts from those conclusions. *Id.* However, if the evidence as a whole can support more than one rational interpretation, the ALJ's decision must be upheld; the district court may not substitute its judgment for the judgment of the ALJ. *Bray*, 554 F.3d at 1222 (citing *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## IV. DISCUSSION

In this appeal, McCrea argues that the ALJ erred by (1) failing to provide legally sufficient reasons for discounting the opinions of Drs. Page, Yuen, and Barry; and (2) failing to find that his chronic headaches, depression, and right hand fusion and deformity were severe impairments at step two. The Court concludes that the ALJ erred in rejecting Drs. Page, Yuen, and Barry's medical opinions, that McCrea satisfies all three conditions of the credit-as-true rule, and that a careful review of the record discloses no reason to seriously doubt that McCrea is, in fact, disabled. The Court therefore reverses the Commissioner's decision and remands the present case for an award of benefits.

### A.    Medical Opinion Evidence

#### 1.    Applicable Law

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009) (citing *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). In the event "a treating or examining physician's opinion is contradicted by another doctor, the '[ALJ] must determine credibility and resolve the conflict.'" *Id.* (quoting *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2001)). "An ALJ may only reject a treating physician's contradicted

Page 12 - OPINION AND ORDER

opinions by providing 'specific and legitimate reasons that are supported by substantial evidence.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). Merely stating conclusions, however, is insufficient: "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Id.* at 1012-13 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)).

## 2.    Dr. Page's Opinions

McCrea argues that the ALJ failed to provide "legitimate" reasons for discounting Dr. Page's opinions, in particular her medical source statement dated August 9, 2013. (Pl.'s Br. at 5.) The Court agrees.

Dr. Page's opinions conflicted with those of the non-examining state agency medical consultants, none of whom opined that McCrea could stand and walk for only two hours during an eight-hour workday, and therefore the ALJ needed to provide specific and legitimate reasons for assigning limited weight to Dr. Page's opinion. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) ("[I]n the case of a conflict 'the ALJ must give specific, legitimate

Page 13 - OPINION AND ORDER

reasons for disregarding the opinion of the treating physician.'"); *Killan v. Barnhart*, 226 F. App'x 666, 668 (9th Cir. 2007) ("Killian's contention that the ALJ erred when he discounted her treating physician's opinion is flawed because the treating physician's opinion conflicted with that of a nonexamining physician, and the ALJ supported his decision with specific and legitimate reasons."). The ALJ failed to do so.

The ALJ assigned limited weight to three of Dr. Page's opinions. First, the ALJ discounted Dr. Page's assessment of McCrea's physical limitations because it is "not fully consistent with the objective medical evidence," and because it is undermined by McCrea's reported activities and conservative treatment. (Tr. 19.) Second, the ALJ discounted Dr. Page's opinion regarding McCrea's manipulative limitations because it is "inconsistent with the objective medical evidence." (Tr. 19.) Third, the ALJ discounted Dr. Page's opinion regarding McCrea's ability to maintain attention and concentration, citing McCrea's lack of mental health treatment, appropriate thought content, and performance on a mental status examination. (Tr. 20.) In evaluating these opinions, the ALJ erred.

### a.    Dr. Page's Assessment of McCrea's Physical Limitations

The ALJ's rejection of Dr. Page's assessment of McCrea's physical limitations is not supported by substantial evidence. In making this finding, the ALJ emphasized that McCrea testified that he was able to walk twenty-two blocks to his attorney's office, and he walks to all of his Narcotics Anonymous meetings. (Tr. 19.) The ALJ neglected to consider that McCrea also testified that he stopped twice on his way to his attorney's office due to foot and leg pain, and his Narcotics Anonymous meetings are only seven blocks from his residence. (Tr. 38-39, 41.) The foregoing facts are significant because McCrea made similar reports to Dr. Page on August 9, 2013, the same day she completed her medical source statement: "He reports that he can walk about [seven to eight]

Page 14 - OPINION AND ORDER

blocks before he needs to stop and rest for [five] minutes from the pain in his feet and [left] leg. . . . [I]t takes him about [forty to forty-five] minutes to walk [twenty] blocks due to pain." (Tr. 482-83.) In rejecting Dr. Page's assessment, the ALJ improperly substituted his lay opinion for that of a medical professional. *See Mars v. Colvin*, No. 3:15-cv-05196-RJB, 2016 WL 67572, at *3 (W.D. Wash. Jan. 6, 2016) ("Dr. Irwin was well aware of plaintiff's daily activities, including them in her report. If Dr. Irwin saw no contradiction between those activities and the limitations which she ultimately assessed, then the ALJ doing so is an improper substitution of the ALJ's lay opinion for that of a medical professional. Substantial evidence does not support the ALJ's rejection of these limitations opined by Dr. Irwin on the basis of plaintiff's reported activities.") (internal citations omitted).

The ALJ's reliance on McCrea's conservative course of treatment is equally unavailing. It is true, as the ALJ alluded to in his written decision, that McCrea treated his bunions and left ankle pain with ibuprofen and an ankle brace for a period of time. (*Compare* Tr. 19, *with* Tr. 459, *and* Tr. 461.) However, the ALJ failed to give due consideration to the fact that McCrea is a recovering heroin addict who lives in clean and sober housing, and thus had a good reason for not seeking more aggressive pain medication. (*See* Pl.'s Br. at 6, "Plaintiff is a recovering heroin addict and lives in clean and sober housing; therefore, he cannot take narcotic pain medication"; Tr. 385, indicating that McCrea must take information "to his housing case manager to ensure [the] medication is allowed in his facility"); *cf. Beasley v. Astrue*, No. 10-5486, 2011 WL 1327130, at *6 (W.D. Wash. Mar. 24, 2011) ("The failure to seek treatment cannot be held against a claimant where the claimant has a good reason for not seeking more aggressive treatment. [Plaintiff's] leeriness about becoming addicted to pain medications is a good reason for his conservative treatment decisions.") (citation

Page 15 - OPINION AND ORDER

omitted). The ALJ also failed to give due consideration to the fact that a podiatrist recommended surgical repair of McCrea's "severe bunions," but his insurance would not cover the procedure. (Tr. 482.)

Finally, the ALJ erred in concluding that Dr. Page's opinion regarding McCrea's physical limitations is "not fully consistent with the objective medical evidence." In support of his conclusion, the ALJ cited the following examples: when Dr. Page examined McCrea on August 9, 2013, there was "no evidence of radiculopathy, straight leg raise was negative bilaterally, [McCrea] had full strength at the hips and knees bilaterally, and a normal sensory exam." (Tr. 19, 486.) These examples do not amount to substantial evidence. McCrea complains about difficulties with his left leg due to back problems, severe bunions, hammer toes, and a chipped bone in his left ankle. (Tr. 39, 42, 232-34, 482.) All of these impairments can be substantiated by x-rays and CT scans. (Tr. 311, 320, 442, 457, 459.) It is clear from the foregoing that the most probative medical evidence supports Dr. Page's opinion that McCrea suffers from disabling physical conditions. The ALJ failed to base his rejection of Dr. Page's opinion upon a holistic review of the medical evidence. *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (noting that a court may not affirm the denial of benefits "simply by isolating a specific quantum of supporting evidence").

### b.    Dr. Page's Assessment of McCrea's Manipulative Limitations

The ALJ did not err in rejecting Dr. Page's assessment of McCrea's manipulative limitations. On August 9, 2013, Dr. Page observed that "[w]eakened grip strength and limited fingering ability were demonstrated on exam." (Tr. 486.) Dr. Page in turn concluded that McCrea could not engage in simple grasping, repetitive grasping, or gross manipulation with his right hand. (Tr. 480.) The ALJ, however, observed correctly that Dr. Page's assessment of McCrea's manipulative limitations

Page 16 - OPINION AND ORDER

conflicted with the findings made by Dr. Yuen in November 2011. (Tr. 19.) Dr. Yuen's examination demonstrated that McCrea "was able to grip and hold objects securely, he was able to grasp and manipulate both large and small objects with the first three fingers, there was no evidence of myotonia or grip release, and there was no evidence of diminution of function with repetition." (Tr. 19-20, 318.) It is the ALJ's province to resolve conflicts in the medical evidence, *Scott v. Astrue*, No. 08-396-PLA, 2009 WL 1159995, at *4 (C.D. Cal. Apr. 28, 2009), and the Court finds no error.

### c.    McCrea's Ability to Sustain Attention and Concentration

The ALJ erred in rejecting Dr. Page's opinion regarding McCrea's ability to sustain attention and concentration during an eight-hour workday. In rejecting Dr. Page's opinion, the ALJ placed considerable emphasis on the fact that McCrea scored thirty out of thirty on a Mini-Mental Status Examination administered by Dr. Yuen. (Tr. 20.) A Mini-Mental Status Examination "is a brief, structured test of mental status that takes about [ten] minutes to complete . . . , with scores of [twenty-five] or higher being traditionally considered normal." *Parks v. Colvin*, No. 5:13–868, 2014 WL 4199055, at *5 n.1 (D.S.C. Aug. 20, 2014). The ALJ failed to explain how a "normal" score on a ten-minute test detracts from Dr. Page's opinion regarding McCrea's ability to sustain attention and concentration during an eight-hour workday. The ALJ similarly failed to explain how treatment notes indicating that McCrea "had appropriate thought content and thought process" detracted from Dr. Page's opinion. Dr. Page did not explicitly link her opinion on attention and concentration deficits to McCrea's mental impairments (*see* Tr. 480), and Dr. Page may have attributed McCrea's inability to sustain attention and concentration to his chronic pain.

///

///

Page 17 - OPINION AND ORDER

### 3.    Dr. Yuen's Opinion

The ALJ failed to provide specific and legitimate reasons supported by substantial evidence

in the record for rejecting Dr. Yuen's opinion. The ALJ rejected Dr. Yuen's opinion—as he did Dr.

Page's opinion—based on McCrea's ability to walk twenty-two blocks to his attorney's office and

to his Narcotics Anonymous meetings, and the fact that McCrea treated his "alleged pain symptoms"

for a period of time with ibuprofen and an ankle brace. (Tr. 19.) These are not specific and legitimate

reasons for rejecting Dr. Yuen's opinion. As explained above, McCrea testified that he had to stop

twice on the way to attorney's office due to foot and leg pain, and his Narcotics Anonymous

meetings are only seven blocks from his residence. (Tr. 38-39, 41.) As a recovering heroin addict,

McCrea also had a good reason for not pursuing more aggressive pain medication, hoping instead

that his insurance provider would approve his bunion surgery. The ALJ overlooked these key facts.

Moreover, and contrary to the ALJ's suggestion, the most probative medical evidence supports Dr.

Yuen's opinion that McCrea suffers from generalized arthritis, back problems, and "marked bunions

in both feet which . . . affect his standing and walking for long periods." (Tr. 318; cf. Tr. 311, 320,

442, 457, 459.) Thus, the ALJ's rejection of Dr. Yuen's opinion is not supported by substantial

evidence.

### 4.    Dr. Barry's Opinion

The ALJ also erred in assigning "[l]ittle weight" to Dr. Barry's opinion that McCrea "was

unemployable due to his limitation in social functioning." (Tr. 15.) In making this finding, the ALJ

noted that McCrea "had appropriate social interaction, good eye contact, and could communicate

clearly" with Dr. Page, and that McCrea "displayed appropriate behavior at the hearing." (Tr. 15.)

The fact that McCrea interacted appropriately with Dr. Page, a long-time treating physician who

McCrea valued a great deal (*see* Tr. 483, 497), or displayed appropriate behavior during a twenty-six minute hearing while accompanied by his attorney (*see* Tr. 30, 47), says very little about McCrea's ability to interact with the general public, supervisors, or co-workers. Dr. Page observed that McCrea "displays chronically socially avoidant behavior[.]" (Tr. 480.) Along similar lines, Dr. Barry observed that McCrea lacked the coping skills necessary to engage in socially appropriate work behavior:

> Now that he is clean and sober his primary means of copying is to isolate himself to his room. He leaves his room only because others are structuring his time and those meetings/appointments he does go to are quite close to his current residence. . . . To look for work, let alone keep a job, you can't exist in a vacuum. There has to be some level of contact and dealings with co-workers and bosses and I don't see how he can tolerate this. And, I don't yet see any effective coping strategies in place. His coping strategies consist of a) threatening others; b) going to his room and locking the door; or c) using and drinking. None of these would have good impacts on his world of work.

(Tr. 339.)

In addition, the ALJ rejected Dr. Barry's opinion on the ground that McCrea's personality assessment inventory was "only marginally valid." (Tr. 15.) Dr. Barry, however, stated explicitly that although certain scores rendered McCrea's personality assessment inventory "marginally valid," neither of those scores "invalidate[d] his profile[.]" (Tr. 337.) Dr. Barry also took into account the fact that McCrea "might" depict "himself somewhat more impaired than others might view him." (Tr. 337.) It was improper for the ALJ to reject Dr. Barry's opinion based on scores that did not invalidate the test results. *See Shelton v. Colvin*, No. 3:14–cv–01561–SI, 2015 WL 7721205, at *4 n.2 (D. Or. Nov. 30, 2015) (acknowledging the Commissioner's arguments regarding a doctor's "concern" over certain test scores, but nevertheless accepting "the scores at face value" because the doctor in question "did not invalidate the results"); *see also Mattox v. Comm'r of Soc. Sec.*, No. 2:14-

cv-1350, 2015 WL 3795859, at *5 (S.D. Ohio June 18, 2015) (stating that the claimant's specialist "was fully aware of the need to evaluate some of the test results more critically due to [a certain known variable], but she still reached conclusions based on the totality of her testing and observations, and the ALJ was not free to substitute his judgment for hers as to the validity of those conclusions").[6]

### 5.    Conclusion

In sum, the ALJ failed to provide legally sufficient reasons for rejecting the opinions of Drs. Page, Yuen, and Barry. Accordingly, remand is required.

## B.    Remedy

"[T]he Ninth Circuit has held that, in social security cases, where the ALJ improperly discredited either a claimant or a treating physician's testimony, that 'it would be an abuse of discretion for a district court not to remand for an award of benefits when [certain] conditions are met.'" *Aparicio v. Colvin*, ---- F. App'x ---- , 2015 WL 9461608, at *3 (9th Cir. Dec. 28, 2015) (quoting *Garrison*, 759 F.3d at 1020). Specifically, a district court should remand for an award of benefits when the following "credit-as-true" criteria are met:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

---

[6] The Court acknowledges that Dr. Barry made a statement about employability, but that was not the crux of his opinion. Dr. Barry supported his medical opinion with clinical findings regarding McCrea's lack of coping skills and inability to interact appropriately with co-workers and supervisors.

*Id.* Even if these criteria are met, however, "the court retains the 'flexibility' to remand for further proceedings where 'an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled.'" *Id.*

In this case, there are no issues that could benefit from further development of the record. The Commissioner argues, *inter alia*, that the ALJ still needs to resolve the conflict between McCrea's testimony and Dr. Page's opinion. In other words, "the Commissioner asks the Court to remand so the ALJ can have a second chance to evaluate the erroneously discounted evidence." *Quinnin v. Colvin*, No. 1:12-cv-01133-SI, 2013 WL 3333026, at *5 (D. Or. July 1, 2013). However, "[a]llowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citation omitted). If Dr. Page's improperly discredited opinion evidence were credited as true, the ALJ would be required to find McCrea disabled on remand. Indeed, Dr. Page opined that McCrea can stand and walk for up to two hours in an eight-hour workday (Tr. 478), and the ALJ stated that a finding of disability would be warranted if McCrea could stand for no more than two hours. (Tr. 44-45). Remand to the ALJ for a calculation and award of benefits is thus appropriate here, because the Court is unable to say that the record as a whole creates serious doubt about whether McCrea is, in fact, disabled.

///

///

///

///

///

Page 21 - OPINION AND ORDER

## V. CONCLUSION

For the reasons stated, this case is remanded to the ALJ for a calculation and award of benefits.

IT IS SO ORDERED.

Dated this 8th day of March, 2016.

STACIE F. BECKERMAN
United States Magistrate Judge